UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE


SONYA M. GOSNELL #310070          )
                                 )
v.                               )          NO. 2:07-CV-130
                                 )          *Greer/Inman*
REUBEN HODGE, Warden             )


## MEMORANUM OPINION


In 1999, petitioner Sonya M. Gosnell was convicted of second degree murder by a jury in the Greene County, Tennessee Criminal Court, receiving a 20-year prison sentence for this offense. Following her futile attempts to obtain relief from her conviction in the Tennessee courts, she filed this *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254 in the Western District of Tennessee, challenging the legality of her confinement. The case was transferred to this Court and, thereafter, respondent submitted an answer, arguing that, for several reasons, petitioner is not entitled to habeas corpus relief. Respondent has also filed the state court record and, thus, the case is ripe for disposition.

## I.  Procedural Background

Together with her co-defendant husband, Bronzo Gosnell, petitioner was indicted and tried for first degree murder, but convicted of the lesser included offense

of second degree murder. She appealed, but the Tennessee Court of Criminal Appeals affirmed her conviction and sentence, and the state supreme court declined discretionary review. *State v. Gosnell*, 62 S.W.3d 740 (2001), *perm. to app. den.* (Tenn. 2001). Petitioner then sought post-conviction relief, but this endeavor likewise was unsuccessful. *Gosnell v. State*, No. E2004-00941-CCA-R3-PC, 2005 WL 602378 (Tenn. Crim. App. Mar. 14, 2005), *perm to app. den*. (Tenn. 2005). She now brings this federal petition for a writ of habeas corpus, offering several claims for review.

## II. Factual Background

The following factual recounting is taken from the state appellate court's opinion on direct review. *See Thompson*, 2003 WL 1202979 419082, at *1 - *4.

On February 1, 1999, Barbara Ann Savage, the former wife of the victim, Charles Gillette, entered the victim's residence and found him dead from apparent gunshot wounds. She immediately phoned 911, and emergency personnel responded. The police seized three shell casings and two bullets from the victim's home. Subsequently, one bullet was removed from the victim, and later that week, a relative of the victim found an additional shell casing at the victim's residence.

The defendants had previously purchased a vehicle from the victim for $600, to be paid at $50 per week. At the time of the murder, the defendants owed the victim $150. The victim's billfold was recovered at the scene containing a nominal sum of cash. However, the victim utilized a pink coffee cup to store cash, and the victim's former spouse observed between $400 and $500 in the cup on January 14, 1999. Officers recovered the pink cup at the victim's residence, but it was empty.

Barbara Ann Savage informed the responding officers that she had phoned the victim on the previous evening, and he told her that he was watching the Super Bowl with the defendants. Pursuant to that information, the police located the defendants at Bronzo Gosnell's mother's home on February 1, 1999, and the defendants agreed to be transported to police headquarters for questioning. Sonya Gosnell advised the authorities she and her husband earlier watched the Super Bowl with the victim, but left shortly after 8:00 p.m. She denied any involvement in the homicide. Bronzo Gosnell advised the authorities he had been drinking that day, and did not remember being at the victim's residence.

 Sonya Gosnell voluntarily drove to police headquarters for another interview on February 4, 1999. During this interview, she stated they left the victim's residence during half-time of the Super Bowl. She further acknowledged she had been to the victim's residence on other occasions to make the car payments. She continued to deny involvement in the homicide.

On February 9, 1999, at approximately 6:00 a.m., officers executed a search warrant at defendants' residence. Bronzo Gosnell was immediately placed in the backseat of a police cruiser. Sonya was allowed to obtain clothing and dress, and was then placed in the cruiser with Bronzo. The defendants' conversations were recorded, and a redacted copy containing incriminating remarks was admitted against them at trial.

Officers seized eight 0.380 shell casings in the defendants' yard and three 0.380 bullets from an adjacent field. A firearms expert with the Tennessee Bureau of Investigation testified that four of the eight 0.380 shell casings seized from the defendants' yard were fired from the same weapon that killed the victim. Additionally, the expert testified that the two bullets recovered from the victim's home, the one bullet recovered from the victim's body, and the three bullets seized from the field adjacent to the defendants' property, were fired from the same gun.

*Gosnell*, 62 S.W.3d at 743-44.  Upon these facts, petitioner was convicted.

### III.  Standards of Review

Decisions of the state courts are reviewed pursuant to 28 U.S.C. § 2254(d), which limits a federal district court's jurisdiction to examine habeas claims on the merits.  For example, a court considering a habeas claim must defer to any decision by a state court concerning that claim unless the state court's judgment (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  28 U.S.C.§ 2254(d)(1) and (2).

A state court's decision is "contrary to" federal law when it arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or resolves a case differently on a set of facts that cannot be distinguished materially from those upon which the precedent was decided.  *Williams v. Taylor*, 529 U.S. 362, 413 (2000).  An "unreasonable application" of federal law under § 2254(d)(1) occurs when the state court decision correctly identifies the governing legal rule in Supreme Court cases but unreasonably applies or unreasonably refuses to extend that principle to the particular facts of the case.  *Id.* at 413; *Ramdass v. Angelone*, 530 U.S. 156, 166

(2000). The habeas court is to determine only whether the state court's decision is objectively reasonable, not whether, in the habeas court's view, it is incorrect or wrong. *Williams*, 529 U.S. at 411.

In addition, state court factual findings are to be presumed correct unless a petitioner offers clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1). That presumption also applies to credibility findings made by state courts. *McQueen v. Scroggy*, 99 F.3d 1302, 1310 (6th Cir. 1996), *cert. den.*, 520 U.S. 1257 (1997), *overruled on other grounds* by *In re Abdur'Rahman*, 392 F.3d 174 (6th Cir. 2004), *judgment vacated* by *Bell v. Abdur'Rahman*, 545 U.S. 1151 (2005); *Smith v. Jago*, 888 F.2d 399, 407 (6th Cir. 1989). Though "deference does not imply abandonment or abdication of judicial review," *Miller-El v. Cockrell*, 537 U.S. 322, 324 (2003), the "highly deferential standard" dictated in § 2254(d), nevertheless, mandates that state courts' decisions "be given the benefit of the doubt." *Bell v. Cone,* 543 U.S. 447, 455 (2005) (citations omitted).

The Court now examines the claims offered in the section 2254 petition under the above standards.

## IV.  The Claims

**A.    *Ineffective Assistance (Pet. at 5, Ground one).***

Petitioner charges that, in various instances, her attorney gave her ineffective assistance. Respondent argues that any claims not properly offered first to the state courts have been procedurally defaulted and that any claims properly preserved for federal habeas corpus review will not entitle petitioner to relief because the state courts' resolution of those claims was not contrary to or an unreasonable application of clearly established federal law. Respondent also suggests that some claims are not cognizable habeas corpus claims.

1.    *The Applicable Law*

To establish a claim of ineffective assistance, a petitioner must show that counsel's performance was deficient and that the sub-par performance was prejudicial to the defense, so as to render the trial unfair and the result unreliable. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In reviewing petitioner's claims of ineffective assistance, the state court accurately cited to the two-prong test articulated in *Strickland*. Therefore, its decision is not contrary to the controlling legal rule for determining such claims. *See Williams v. Taylor*, 529 U.S. 362, 390 (2000) (holding that *Strickland* "squarely govern[s]" such claims). The issue for review, thus, is whether the state court unreasonably applied *Strickland* in rejecting those claims.

To demonstrate deficient performance, a petitioner must show that his counsel's representation fell below an objective standard of reasonableness on the facts of the particular case, viewed as of the time of counsel's conduct. *Id.* at 688, 693-94. A reviewing court must examine counsel's performance with great deference, *id.* at 694, may not use hindsight in the evaluation, and must presume that an attorney has exercised reasonable professional judgment in making all significant decisions. *Strickland*, 466 U.S. at 690.

A finding of a professionally unreasonable attorney error does not justify setting aside a conviction or sentence in a criminal proceeding, if the error has no effect on the ultimate judgment. *Id.* at 691. Thus, to establish the requisite prejudice, a petitioner must show that, absent her attorney's errors, there is a reasonable probability that the result of her trial would have been different. *Lynott v. Story*, 929 F.2d 228, 232 (6th Cir. 1991). The focus of a reviewing court is "on whether counsel's errors have undermined the reliability of and confidence that the trial was fair and just." *Austin v. Bell*, 126 F.3d 843, 847 (6th Cir. 1997) (citing *Strickland*, 466 U.S. at 687). If there is insufficient prejudice, a court need not consider the deficient-performance prong of the test. *Strickland,* 466 U.S. at 697 (observing that a determination of whether counsel's performance was deficient is unnecessary where there is an insufficient showing of prejudice).

2.      *Alleged Attorney Errors*

a)      ***Domination/Abuse Issues & Further Mental Examination***

In this claimed illustration of ineffective assistance, petitioner asserts that her attorney believed that she feared her co-defendant husband, that she was dominated and controlled by him, and that this had led her to make unknowing and involuntary decisions.  Petitioner further asserts that she told counsel that her husband was an angry—and sometimes violent—alcoholic, who had subjected her to emotional, mental, and physical abuse.  Petitioner maintains that, despite those beliefs and information, counsel failed to secure the proper paperwork to support these allegations.[1]

During the post-conviction hearing, trial counsel testified concerning this issue, [Add. 3, vol. 2, Post-Conviction Hr'g Tr. at 23-33], stating that, while investigating petitioner's case, he had learned of the abuse allegations and that he had tried to obtain an expert who could explore whether she was making decisions about her defense "at the behest of her husband," instead of making them "solely and alone for herself," and whether she was suffering from a kind of post-traumatic

---

[1] The contention involving "proper paperwork" apparently is a reference to an argument made during petitioner's post-conviction case that her trial attorney was incompetent for failing to demonstrate, by reference to specific facts, circumstances, and affidavits, that his client had a "particularized need" for an expert—a necessary showing to obtain a state-funded expert.   [Add. 3, vol. 2, Post-Conviction Hr'g Tr. at 76-80; Add. 4, Doc. 1, Pet'r's Post-Conviction App. Br. at 15-19].

stress syndrome or battered wife syndrome.  Counsel further stated that, to support his request for an expert, he obtained a schedule of fees and a curriculum vita from a forensic psychologist at East Tennessee State University and also submitted his own affidavit concerning his client's possible memory lapses, odd behavior during interviews, past history of hospitalizations for mental illness, and her co-defendant husband's past history of abuse, alcoholism and violence.

Following the hearing, the post-conviction court found that "[trial counsel] can't be held at fault for that decision of the court because he tried to get it. He did everything he knew to get it, and the court denied it. The court denied it, and the decision by the court denying it was affirmed on appeal . . . ."

When this claim was offered during the post-conviction appeal, the Court of Criminal Appeals pointed to that part of the record which showed that trial counsel, in fact, sought an additional mental examination, but that the trial court denied the motion.  Next, the Court of Criminal Appeals contrasted the allegations in petitioner's claim with her testimony at the post-conviction hearing, during which she denied that she was under the psychological dominance of her husband.  The post-conviction court likewise had found, according to the state appellate court, that petitioner remained protective and defensive of her co-defendant husband, even at the hearing, and that, despite their nearly five years of separation by imprisonment,

she "still sa[id] the same things that she said over four years ago," i.e., that "I'm not under his domination, I'm independent, I think for myself."

After finding (by implication) no deficiency of performance on counsel's part, the state appellate court determined that no prejudice had been shown either since petitioner had failed to establish that, but for the absence of an additional psychological examination, "the results of the proceeding would have been different." The intermediate state court left undisturbed the lower court's conclusion that petitioner had received effective assistance of counsel.

At the outset of the discussion of this claim, the Court recognizes, as did the Court of Criminal Appeals earlier in its opinion, that the correct standard for prejudice, under *Strickland*, is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Gosnell*, 2005 WL 602378, *3 (citing *Strickland*, 466 U.S. 694). In light of Supreme Court precedent on the subject, this Court does not find that the state court repudiated the governing rule in *Strickland* by its omission of the words "reasonable probability" from its recitation of the prejudice test (i.e., "would have been different"). *See Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (ruling that a state court's "occasional shorthand reference" to the *Strickland* prejudice standard is not a repudiation of that standard) (per curiam); *Holland v. Jackson*, 542 U.S. 649

(2004) (finding that the state court's use of the word "probable" instead of "reasonable probability" was not contrary to *Strickland* where it previously recited the correct prejudice standard) (per curiam).  *But see Vasquez v. Bradshaw*, 345 Fed. Appx. 104, 110-11 (6th Cir. Sept. 2, 2009) (finding that state court's use of language "would have been different" to describe the  prejudice test is contrary to the clearly established law in *Strickland*).  After all, this Court must apply a highly deferential standard of review, giving the state court  decision the benefit of the doubt and presuming that it knew and followed the law.  *Woodford*, 537 U.S. at 24.

The record fully supports trial counsel's testimony as to the steps he took and the motions he filed to obtain for his client an additional psychiatric examination in order to ascertain whether a theory of battered wife syndrome (or post-traumatic stress disorder) was a viable defense.  Petitioner may obtain relief only by showing that the result reached by the state court is an unreasonable application of *Strickland* or is based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  The state court's resolution of the claim was neither of these things and petitioner is not entitled to the writ.

b)      ***Severance Issue***

The second instance of ineffective assistance, so petitioner asserts, is her trial attorney's failure adequately to move for or obtain a severance.

In the first of two pretrial motions to sever [Add. 1A, vol. 1 at 29-31], counsel argued that all the grounds for a severance, as set forth in *Zafiro v. United States,* 506 U.S. 534 (1993), were present in petitioner's case, that a joint trial presented risks that she would be prejudiced by the admission of evidence relevant to her co-defendant, but prejudicial to her; by statements to be offered at trial, which were relevant to her co-defendant, but prejudicial to her; and by the unlikelihood that those statements could be redacted successfully. The state redacted those statements. [Add. 1B, vol. 1, Mot. Hr't at 3.]

In the second motion—apparently filed under seal—counsel again sought a severance predicated on proof discovered during the investigation and enumerated in the motion which presented a theory of defense which would be detrimental to her co-defendant husband. [Add. 1A, vol.1 at 99-131; Add. 1B, vol. 1, at 1-2]. The trial court orally denied the motions to sever, finding that "[t]he defendants are charged with the same offense on the same date and the theory of the State is in the nature of a conspiracy theory and the other matters, such as marital privilege, do not overcome that." [Add. 1B, vol. 1, Mot. Hr't at 2]. On direct appeal, petitioner challenged the trial court's denial of her motion to sever, but the state appellate court found no abuse of discretion and no error.

Petitioner then filed a post-conviction petition, asserting in her pleadings that her attorney's handling of the severance issue constituted ineffective assistance. At the post-conviction hearing, counsel testified that petitioner refused to permit him to call witnesses whom he had interviewed and whom he believed could exonerate petitioner because they would implicate her husband. He further testified that his client had rejected the prosecutor's plea offer of twelve years. Petitioner testified at the same hearing, explaining that she rejected the plea because she thought that, if she went to trial, that the case would be dismissed. Petitioner's testimony in all other respects was in accord with her attorney's, though she insisted, as noted earlier, that she was not afraid of her husband.

After hearing the testimony and reviewing the evidence, including this testimony, the post-conviction court ruled that petitioner had "thwarted" defense theories developed by her attorney and had "handcuffed" counsel by refusing to permit him to call those witnesses beneficial to her but inculpatory of her husband. It likewise ruled that there was nothing to show that an additional mental examination would have supported a severance of petitioner's case from her co-defendant's. Concluding that the case was as well-prepared as it could possibly be and that counsel, leaving "no stone unturned," had filed all motions "that one could think of," the post-conviction court held that petitioner had received effective

assistance of counsel "at every stage of the proceedings. . . ." [Add. 3, vol. 1 at 24-29].

When this issue was carried to the Court of Criminal Appeals, it pointed to the post-conviction court's findings and declined to disturb the lower court's conclusion that counsel gave petitioner effective assistance.

Petitioner has not shown that the state court's decision with respect to this claim of ineffective assistance is an unreasonable application of *Strickland*. The record refutes petitioner's allegations that her attorney failed to move adequately for a severance. Counsel filed two motions to sever, one rather lengthy, supported by citations to authority and a proffer of proof to show why a severance was warranted. Indeed, as the post-conviction court recognized, counsel simply could not secure a severance for his client because the trial court denied his motions. Moreover, counsel causes no prejudice by failing to make an argument that would not have been successful. *Morrison v. Estelle,* 981 F.2d 425, 429 (9th Cir.1992). Clearly, there is no prejudice where counsel, in fact, makes an argument which is judicially determined to be baseless.

c) *Comments/ Warrantless Seizure/Generally Ineffective*

Petitioner alleges, in this claim, that her attorney failed to object to certain comments at trial and to the introduction of prejudicial evidence that was obtained outside of a search warrant. She further alleges that counsel was ineffective in representing her.

This claim is conclusory because the petitioner does not specify the comments to which counsel should have objected, identify the evidence which was prejudicial, seized without a warrant, and then introduced, or give any explanation as to how her attorney was ineffective in representing her. Bare, conclusory allegations, unsupported by facts, cannot establish a constitutional violation. *Lynott v. Story*, 929 F.2d 228, 232 (6th Cir. 1991). To be entitled to habeas corpus relief, a petitioner must "state facts that point to a 'real possibility of constitutional error.'" *Blackledge v. Allison*, 431 U.S. 63, 75 n.7 (1977) (quoting Advisory Committee Notes on Rule 4, Section 2254 Rules).

**B.** ***Recorded Conversation (Pet. at 7, Ground two).[2]***

Petitioner asserts that, during the execution of a warrant to search their residence, she and her co-defendant husband were placed into the back seat of a police cruiser, in which an officer had placed a tape recorder with an activated

---

[2] The identical claim is raised twice more in the petition. (Doc. 2, Pet. at 9 and 11).

transmitter and that, unbeknownst to the couple, he listened to and recorded their conversation, after she had requested her attorney. Petitioner asserts (by inference) that the admission of their conversation into evidence violated her right to privacy and also the marital communication privilege.

The state court first entertained the "privilege" assertion, finding that the proof showed that the conversation was subjectively intended to be private, but that petitioner had no objectively reasonable expectation of privacy in the back seat of a police cruiser. Concluding that if it is unreasonable to expect that a conversation in a police cruiser will be private, then it is likewise unreasonable to expect it to be confidential, the state court found that the privilege did not exist under the circumstances of petitioner's case. The state appellate court then rejected her claim.

Whether the marital communication privilege exists in the context of a Tennessee criminal proceeding is a state law matter and does not raise a cognizable habeas corpus claim, *Russo v. Hulick*, 2008 WL 3876087, *13 (C.D. Ill. Aug. 8, 2008) (listing cases), unless it rises to the level of a constitutional due process violation. *See Byrd v. Armontrout*, 880 F.2d 1 (8th Cir.) (a state court's misapplication of the marital privilege does not establish a due process violation), *cert. den*., 494 U.S. 1019 (1990). The Court sees no such violation here.

The "right of privacy" aspect of the claim may be interpreted as alleging a violation of the Fourth Amendment. The Fourth Amendment to the Constitution constitutes a limitation on the police powers of the states of the United States by protecting against unreasonable searches and seizures. "The gravamen of a Fourth Amendment claim is that the complainant's legitimate expectation of privacy has been violated by an illegal search or seizure." *Kimmelman v. Morrison*, 477 U.S. 365, 374 (1986) (citing *Katz v. United States,* 389 U.S. 347 (1967)).

In *Stone v. Powell*, 428 U.S. 465 (1976), however, the Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Id*. at 494. In other words, a habeas petitioner may not seek to raise issues challenging the legality of a search and seizure, if she had a full and fair opportunity to raise her claims in state court and if the presentation of the claims was not frustrated by any failure of the state's corrective processes. *Id.* at 494-95.

A review of the record makes it clear that petitioner was given a chance to fully and fairly litigate her Fourth Amendment claims in the Tennessee courts because this issue was actually raised by petitioner and decided by those courts.

Thus, under the *Stone* doctrine, petitioner's unlawful-search claim cannot be reviewed in this federal habeas corpus proceeding.

**C.    *Pretrial Statements (Pet. at 8, Ground three).***

Petitioner maintains that, while in custody, she gave certain pretrial statements to the police in a room with the door locked.  She also maintains that the police did not stop questioning her after she asked for her attorney and that her children were used as leverage to obtain the statements.  As respondent points out, petitioner has not specified the statement she is challenging since she gave at least two and, in this respect, her claim is conclusory.  As stated earlier, conclusory claims provide no basis for habeas corpus relief.  *Lynott*, 929 F.2d at 232.

However, since petitioner attacked her pretrial statements in her direct appeal, the Court will assume that her federal claim is the same claim she raised in the state courts and will address it as such. On direct review, petitioner claimed that statements she gave to authorities on February 1 and 4, 1999, were taken before she was advised of her rights under *Miranda* and that they, therefore, should have been suppressed.

The Court of Criminal Appeals provided the factual background for both statements, the first of which was given on February 1, 1999. Two officers, who had located petitioner and her co-defendant husband at her mother-in-law's

house, asked them if they would be willing to answer questions at police headquarters. They assented and were taken to the police station in an unmarked police car, where they were questioned. They were told, however, that they were not under arrest, were free to leave at anytime, and would be returning home. When not being questioned, petitioner and her husband were permitted to visit with relatives who came to the police station and the couple was taken back home after the questioning ended.

As to the statement of February 4, 1999, two officers approached petitioner at her home in the early morning, told her that they would like to speak with her, and acceded to her request to come to the police station later. Petitioner arrived at the police station around 11 o'clock, spoke with a detective in his office for one to two hours, and then went to lunch with him. After lunch, he gave her *Miranda* warnings and continued the interrogation, following which she left in her own vehicle.

The rule articulated in *Miranda v. Arizona*, 384 U.S. 436 (1966), requires law enforcement officers to advise a suspect during custodial interrogation that "[s]he has a right to remain silent, that any statement [s]he does make may be used as evidence against h[er], and that [s]he has the right to the presence of an attorney, either retained or appointed." *Id.,* at 444. The remedy for a violation of

*Miranda* is the exclusion, during the prosecution's case-in-chief, of the statement stemming from the custodial interrogation. *Ibid.*

When this issue was carried to the Court of Criminal Appeals, it first observed that "custodial interrogation" occurs, under the *Miranda* rule, when "law enforcement initiates questioning after a person has been taken into custody or otherwise deprived of h[er] freedom of action in any significant way." *Gosnell*, 62 S.W.3d at 745 (citing *Miranda*, 384 U.S. at 444). The state appellate court, therefore, proceeded to exam the relevant circumstances so as to determine whether "under the totality of the circumstances, a reasonable person in the suspect's position would consider . . . herself deprived of freedom of movement to a degree associated with formal arrest."

The state appellate court then pointed to findings made by the lower court in connection with petitioner's February 1st statement. The state trial court found that "there were no coercive circumstances; the time and location of questioning was favorable to the state; the [petitioner] was transported to headquarters voluntarily in an unmarked vehicle by officers in plain clothes; the duration and character of the questioning and the officer's tone of voice and general demeanor were extremely favorable to the state; there were no officers with [petitioner] in the hall where [she] spent time visiting with relatives; there were no

confrontations of suspicions of guilt; and [petitioner] was told that she would be returning home.  *Gosnell*, 62 S.W. 2d at 745.

In connection with the February 4th statement, the trial court found that petitioner "voluntarily drove to police headquarters upon request by investigators," that she engaged in a one- to two-hour casual conversation with a detective concerning the circumstances of the crime, that the door was open during the interrogation, that the situation was non-confrontational, and that, when the questioning concluded, petitioner left in her vehicle.  *Gosnell*, 62 S.W. 2d at 746. The state court observed that, at the suppression hearing, only the officers testified and that petitioner did not.  It ultimately determined that those statements were properly admitted.

In ruling on this issue, the state appellate court cited to *Miranda* as containing the governing legal rule, and to state law as containing the factors for determining whether a *Miranda* violation had occurred.  The state court's decision is not contrary to the well established legal rule in a Supreme Court case because *Miranda* supplies that rule, *Oregon v. Mathiason*, 429 U.S. 492, 494 (1977) ("Our decision in *Miranda* set forth rules of police procedure applicable to "custodial interrogation."), and because the factors the state court applied are not discordant with the Supreme Court's pronouncements on that subject:

> "Two discrete inquiries are essential to the determination: first, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave. Once the scene is set and the players' lines and actions are reconstructed, the court must apply an objective test to resolve the ultimate inquiry: was there a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest."

*Thompson v. Keohane*, 516 U.S. 99, 112 (1995) (internal quotation marks and footnote omitted). *See also Stansbury v. California*, 511 U.S. 318, (1994) (per curiam) (explaining that "the initial determination of custody depends on the objective circumstances of the interrogation"). *Miranda*, however, does not dictate that its warnings be administered to everyone the police question or simply because the questioning occurs at the police station or the questioned person is a suspect. *Mathiason*, 429 U.S. at 495. Instead, "*Miranda* warnings are required only where there has been such a restriction on a person's freedom as to render him 'in custody.'" *Id.*

Habeas corpus relief, then, turns upon whether the state court unreasonably applied *Miranda* to resolve petitioner's claim. Other Supreme Court cases are instructive on the subject. In *Mathiason*, the Supreme Court found that a petitioner was not in custody "or otherwise deprived of his freedom of action in any significant way," where he came voluntarily to the police station, where he was

immediately informed that he was not under arrest and left at the close of the half-hour interview, unhindered by the police.  *Id.*, 429 U.S. at 664-65.

In *Yarborough v. Alvarado*, 541 U.S. 652 (2004), the Supreme Court found these facts to be important:  The police did not take the suspect to the police station, did not require him to appear at the station at a specified time, did not subject him to threats or suggestions of prosecution or arrest, asked him twice whether he wanted a break, and offered no impediment to his returning home following the interview.  *Id*. at 664-65.  Those circumstances were found consistent with a situation in which a reasonable person would have felt free to cut off the questioning and leave.  Other facts pointed in the opposite direction—the suspect was questioned at the station for two hours, not told that he was free to leave, and taken to the station by his parents, not of his own accord, which made unclear the extent of his control over his presence at the interview.  Noting that the custody test is general and affords courts more leeway to make decisions on a case by case basis, the Supreme Court concluded that the state court's custody determination was not an unreasonable application of *Miranda* and its progeny.

The state court's factfindings surrounding the two statements are presumed correct, unless petitioner offers clear and convincing proof to rebut them. No such evidence has been offered.  Given those presumptively-correct factual

findings, the state court's application of *Miranda* and the totality of the circumstances test affirm that the admission of those statements was not objectively unreasonable. The petitioner is entitled to no relief on her claim.

**D.**    ***Severance Issue (Pet. at 8, Ground three).***

Petitioner asserts, in this claim, that counsel moved to sever on the basis that her co-defendant husband was dominating and using fear to control her and that, though the trial court was aware that petitioner's decisions were not reflective of someone who was in a knowing and independent frame of mind, it denied her motions for a severance, thereby rejecting the theory that she was under the control of her husband. The trial court found that petitioner and her co-defendant were charged with the same offense on the same date, that the state's theory of the case was conspiracy, and that these factors called for a joint trial.

On direct appeal, petitioner challenged the trial court's denial of her motion to sever, arguing that her co-defendant husband's prior abusive conduct kept her from offering exculpatory evidence because it would have inculpated him; that her testimony, if she had taken the stand, might have incriminated her husband, and that by denying a severance , the trial court effectively denied her the right to testify; and that her husband's statement to a fellow inmate that he had told his brother to destroy the murder weapon prejudiced her defense.

In addressing the severance claim, the state appellate court found that petitioner had made the decision not to testify or to offer evidence inculpating her husband and that she was not precluded from so doing. It further found that her husband's jailhouse statement incriminated himself, but not petitioner, and, thus, presented no *Bruton* problem.[3] The Court of Criminal Appeals also observed that mutually antagonistic defenses do not *per se* require a severance, although they may in some instances. *Gosnell*, 62 S.W.3d at 749 (citing *Zafiro v. United States,* 506 U.S. 534, 539 (1993)). Finding no abuse of discretion and no error, the state intermediate court declined to grant relief.

The resolution of this issue, in the main, was bottomed on state law governing joinder and severance of criminal trials. However, whether the denial of a severance violated state law is not a cognizable claim in this habeas court. *Combs v. Tennessee*, 530 F.2d 695 (1976). The only constitutional issue residing in this claim is whether the denial of a severance impinged on petitioner's right to due process of law as secured by the Fourteenth Amendment to the U.S. Constitution. *Davis v. Coyle*, 475 F.3d 761, 777 (6th Cir. 2007) (citing *Corbett v. Bordenkircher*, 615 F.2d 722, 724 (6th Cir.1980)).

---

[3]   In *Bruton v. United States*, 391 U.S. 123, 127 (1968), the Supreme Court found that the admission at a joint trial of a co-defendant's confession which implicated a defendant resulted in prejudicial error and, thus, violated the Confrontation Clause.

To prove a due process violation, petitioner must show that the joint trial "result[ed] in prejudice so great as to deny [her] . . . right to a fair trial." *Id.* (quoting *United States v. Lane,* 474 U.S. 438, 446 n. 8 (1986)). Joint trials of co-defendants are generally favored; a habeas petitioner bears a heavy burden to show that she was denied a fair trial by the failure to sever her trial from a co-defendant's when both allegedly participated in the same offense. *See United States v. Horton*, 847 F.2d 313, 317 (6th Cir. 1988). *See also Richardson v. Marsh*, 481 U.S. 200, 210 (1987) (observing that joint trials avoid inconsistent verdicts and the scandal and inequity of such verdicts and also enable a more accurate assessment of relative culpability).

The Court sees nothing in the record to show that petitioner was denied a fair trial by virtue of the joint trial with her co-defendant husband. They did not offer mutually antagonistic defenses because they did not point the finger of guilt at each other. Instead, they offered identical defenses—both maintaining that, when they left the victim's house, he was alive and that they did not kill him. Indeed, according to her trial counsel's testimony, petitioner insisted that, if counsel presented a potential witness whose proposed testimony would incriminate her husband she would take the stand and testify that the witness lied. She, therefore,

has failed to show that the denial of her motion for severance resulted in prejudice so great as to deny her a fundamentally fair trial.

The state court did not unreasonably apply Supreme Court precedent in deciding this claim against petitioner. *Lane*, 474 U.S. at 446, n. 8 (finding that improper joinder of defendants does not, in itself, violate the Constitution but that, only if the showing of prejudice is of such magnitude as to deny a fair trial, will it rise to level of a constitutional violation). The writ will not issue on this claim.

**E.     *Denied Further Mental Examination (Supp. to Pet., Ground five).***

In her fifth claim, petitioner challenges the denial of funds for a further mental evaluation, which she argues was necessary to ascertain whether she suffered from post-traumatic stress disorder due to abuse and also to support her motion to sever. The trial court denied the request on the bases that she had failed to show a particularized need and that her case did not involve self-defense. Respondent notes that the claim was raised on appeal as a violation of the rule in *Ake v. Oklahoma*, 470 U.S. 68 (1985), and argues that the Court of Criminal Appeals' disposition of the claim does not entitle petitioner to relief.

When this issue was offered on direct review, the appellate court observed that an indigent non-capital defendant is entitled to state-funded psychiatric services only upon a showing of a "particularized need." Gosnell, 62 S.W.3d at 748

(citing to *State v. Barnett,* 909 S.W.2d 423, 430 (Tenn. 1995)). Thereafter, it held that the record did not disclose that petitioner had shown the requisite "particularized need" for further evaluation.

*Ake v. Oklahoma,* 470 U.S. 68 (1985), held that an indigent defendant in a capital case who shows that sanity at the time of the offense is likely to be significant factor at trial must be afforded access to a competent psychiatrist, *id* at 83 (1985), but limited that right to one competent psychiatrist, which the state could select. *Id.* at 78-79 and 83. This showing is made by supplying particular facts demonstrating the necessity of a psychiatrist, and not just by making general allegations of need.

In *State v. Barnett*, the case upon which the state appellate court relied, the state supreme court applied the rule in *Ake* to non-capital cases, but it did so by expanding "the minimum level of protection mandated by Federal Constitution" in its role as a "Court of last resort in interpreting the State Constitution." *Barnett*, 909 S.W.2d at 430. Petitioner does not cite, and this Court has been unable to find, a United States Supreme Court case which, like Tennessee's highest court, extends the rule in *Ake* to non-capital cases. *See Schriro v. Summerlin,* 542 U.S. 348, 362 (2004) (noting that the "qualitative difference of death from all other punishments"-namely, its severity and irrevocability-"requires a correspondingly greater degree of scrutiny

of the capital sentencing determination" than of other criminal judgments) (Breyer, J., dissenting) (quoting *California v. Ramos,* 463 U.S. 992, 998-999 (1983); *Ake,* 470 U.S. 68 at 87 ("In capital cases the finality of the sentence imposed warrants protections that may or may not be required in other cases.") (Burger, C.J., concurring in judgment).

Because a state court does not unreasonably apply clearly established Federal law by refusing to apply a legal principle which has not been "squarely established" by the Supreme Court, *Knowles v. Mirzayance*, 129 S.Ct. 1411, 1419 (2009), the rejection of this claim by the Court of Criminal Appeals was not an unreasonable application of Supreme Court precedent.

**F.** ***Illegally obtained Evidence (Supp. Pet., Ground six).***

In her final claim, petitioner asserts that the state court erred in allowing into evidence shell casings not listed in the warrant, not in plain view, and found buried in the dirt on adjacent property by using a metal detector. Federal review of this claim, which petitioner had a full and fair opportunity to raise in state court and was not frustrated in presenting due to any failure of the state's corrective processes, is foreclosed by the doctrine in *Stone v. Powell*, 428 U.S. 465 (1976).

## V. <u>Conclusion</u>

For the above reasons, this petition will be **DENIED** and the case will be **DISMISSED**.

## VI. Certificate of Appealability

Finally, the Court must decide whether to issue a certificate of appealability (COA). Petitioner qualifies for issuance of a COA if she has made a substantial showing of the denial of a constitutional right; she makes such a showing by demonstrating that reasonable jurists might question the correctness of the Court's procedural rulings or its assessment of her constitutional claims. *See Slack v. McDaniel,* 529 U.S. 473 (2000). The Court has found that some claims are not cognizable in these federal habeas proceedings. The Court also has found that claims which were adjudicated in state court would not support habeas corpus relief because, after an examination of the state court decisions, the record, and the relevant governing law in Supreme Court cases, those decisions did not run contrary to well established federal law, did not reflect that the state courts had unreasonably applied that law, and did not demonstrate that the state courts had disposed of those claims by unreasonably determining the facts offered to those courts.

The Court now finds that reasonable jurists could not disagree with the resolution of these claims and could not conclude that they "are adequate to deserve

encouragement proceed further," *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003), and will **DENY** issuance of a COA.  28 U.S.C. § 2253; Fed. R. App. P. 22(b).

A separate order will enter.

**ENTER**:


s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE